IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARRELL W. TITUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 2508 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| TRANSPORTATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Pro se Plaintiff Darrell W. Titus brought the present six-count Second Amended Complaint against his present employer Defendant Illinois Department of Transportation ("IDOT"), as well as Defendants Robert Dilling, Jose Feliciano, Rafael Frias, Mark Jercha, Diane O'Keefe, James McKay, and William Helm, all of whom are employees of IDOT. Titus alleges claims of race discrimination and retaliation in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Titus also brings a common law claim of intentional infliction of emotional distress pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendants' motion.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1 Statements

Because Titus is a pro se litigant, IDOT served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local

Rule 56.2. The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). The parties' statements must contain short numbered paragraphs including references to the affidavits, parts of the record, and other supporting materials. *See id.; see also Ammons,* 368 F.3d at 817.

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006); *Solaia Tech. LLC v. Arvinmeritor, Inc.,* 361 F.Supp.2d 797, 826-27 (N.D. Ill. 2005). The types of evidentiary material available to support Local Rule 56.1 statements are numerous, but the most common materials include affidavits, deposition transcripts, and business documents. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). In addition, "hearsay is

inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997); *see, e.g., Keri v. Board of Tr. of Purdue Univ.,* 458 F.3d 620, 630 (7th Cir. 2006).

A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. In addition, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Although courts must construe pro se pleadings liberally, *see Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006), a plaintiff's pro se status does not absolve him from complying with the Local Rules. *See Greer v. Board of Ed. of City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.") With these principles in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

### A.     Parties

Darrell Titus is a current employee of IDOT and works as a "highway maintainer" at the Emergency Traffic Patrol ("ETP") facility for District One, which is located at 3501 S. Normal Avenue, Chicago, Illinois. (R. 83-1, Defs.' Rule 56.1 Stmt. Facts ¶ 2.) Titus has held this

position with IDOT for over twelve years.  (*Id*.)  IDOT is an agency of the State of Illinois.  (*Id.* ¶ 3.)  Diane O'Keefe is the Regional Engineer for IDOT District One.  (*Id.* ¶ 4.)  Rafael Frias is the current ETP Patrol Manager for IDOT and has held this position since August 16, 2004.  (*Id.* ¶ 6.)  From June 2004 through March 2007, IDOT employed William Helm as the Expressway Traffic Operations Manager.  (*Id.* ¶ 7.)  In July 2004, Helm was asked to temporarily take over as ETP Patrol Manager until a new full time Patrol Manager could be hired, and did, until August 16, 2004, when IDOT hired Frias.  (*Id*.)  Jose Feliciano began his employment with IDOT in March 1985 as a highway maintainer and became a lead worker in 1992.  (*Id.* ¶ 9.)  Presently, Feliciano is a lead-lead worker.  (*Id*.)  Mark Jercha began his employment at IDOT in 1997 as a highway maintainer and is currently a lead worker.  (*Id*. ¶ 10.)  IDOT has employed Robert Dilling since June 1975, when he started as a highway maintainer.  (*Id*. ¶ 11.)  Dilling became a lead worker in 2005.  (*Id*.)  In 1979, IDOT hired James McKay as a highway maintainer.  (*Id.* ¶ 12.)  In 1991, McKay became an Engineering Technician in District One.  (*Id.*)

### B. Highway Maintainer Shifts & Duties

There are three shifts of highway maintainers at ETP called the "A," "B," and "C," shifts.  (*Id*. ¶ 34.)  The "A" shift is the midnight shift and the "B" and "C" shifts rotate every month between working the day shift and the evening shift.  (*Id*.)  District One ETP is divided into 12 patrol assignments for highway maintainers.  (*Id.* ¶ 35.)  Lead workers are assigned to oversee highway maintainers in one of three areas during a shift.  (*Id*.)  Each area has three to four patrol assignments within its boundaries.  (*Id*.)  A lead-lead worker oversees the lead workers and highway maintainers on a shift.  (*Id*. ¶ 36.)

A highway maintainer patrols his section of the highway looking for motorists that need

4

assistance or any other irregularities on the highway, such as debris that could cause an accident. (*Id.* ¶ 37.) Dispatch will often call a highway maintainer and send him or her to a location to assist motorists or the State Police, as well as perform any number of a highway maintainer's duties. (*Id.*) When a highway maintainer exits his vehicle for any reason – whether to assist a motorist or to take a break – he is required to call dispatch and report what he is doing. (*Id.* ¶ 38.) Likewise, when a highway maintainer arrives at a location, he is required to call into dispatch and report where he is. (*Id.*)

### C. Alleged Adverse Employment Actions

#### 1. July 2004 Shift Change

In July 2004, due to a lower than normal number of highway maintainers available at ETP, Helm, acting as temporary Patrol Manager, attempted to balance the manpower and work experience on the three ETP shifts. (*Id.* ¶ 40.) To do so, Helm spoke to various ETP employees, including lead and lead-lead workers. (*Id.*) Consequently, IDOT management changed eighteen workers' shifts – nine of whom were white, five African-American, and four Hispanic. (*Id.* ¶ 41.) Specifically, IDOT management switched Titus from the "C" shift to the "B" shift, changing which months he would work the day shift and which months he would work the evening shift. (*Id.* ¶ 42.) Titus' shift change had no effect on his duties or salary. (*Id.*)

#### 2. Discipline for April 2005 Incidents

On April 9, 2005, Titus stopped on the side of the Eisenhower Expressway to assist a motorist. (*Id.* ¶ 43.) During this stop, Titus climbed over a fence and was within 15 feet of live Chicago Transit Authority ("CTA") electric tracks causing a CTA train to stop. (*Id.*) At that time, Feliciano, who was a lead-lead worker, was trying to contact Titus through ETP dispatch,

5

but Titus failed to respond. (*Id.* ¶ 44.) In another incident that took place on April 28, 2005, Titus arrived late to ETP and was in the locker room when Feliciano and Dilling, a lead worker, entered the locker room. (*Id.* ¶ 45.) According Feliciano, Dilling, and other witnesses, Feliciano asked Titus why he was late and then instructed him to get out on the road. (*Id.*) Titus reacted by yelling, using profane language, and sticking his finger in Feliciano's face. (*Id.*) Titus also slammed the doors and stormed around the ETP facility. (*Id.*)

Based on these April 2005 incidents and information provided by eight different IDOT employees, Frias, ETP's Patrol Manager, filled out a rules infraction notice against Titus. (*Id.* ¶ 46.) After Titus' June 7, 2005, pre-disciplinary meeting, Titus received a four-day suspension for the April 2005 incidents. (*Id.* ¶ 48.) Specifically, the suspension was for "unsafe work conduct, inattention to duties, disruptive conduct, and insubordination." (*Id.*)

### 3. May 2005 Fitness for Duty Examination

After the April 28, 2005, incident, management scheduled Titus for a fitness for duty evaluation on May 2, 2005, and he was placed on paid administrative leave. (*Id.* ¶ 49.) After his evaluations, a treating physician concluded that Titus needed counseling before returning to work, and thus Titus was placed on a leave of absence pending his treatment. (*Id.* ¶¶ 50, 51.) Titus returned to work on October 7, 2005. (*Id.* ¶ 53.)

### 4. Discipline for December 2005 Incidents

On December 2, 2005, Titus did not want to drive the vehicle that was assigned to him and thereafter became upset with Jercha, a lead worker, and Feliciano. (*Id.* ¶ 54.) Titus yelled at them, used profanity, and slammed doors around the office. (*Id.*) On December 7, 2005, Jercha told Titus to wait before he pulled his truck behind ETP into the mechanics bay. (*Id.* ¶ 55.)

Nevertheless, Titus ignored Jercha's instructions. (*Id.*) When Jercha tried to explain to Titus that he should check with the mechanics before driving into the mechanics bay, Titus became upset and used profane language. (*Id.* ¶ 56.) On December 29, 2005, Titus refused to provide Feliciano with paperwork regarding a court date that Titus had on December 30, 2005, which prevented Feliciano from marking down Titus' time and making adjustments to the December 30 work schedule. (*Id.* ¶ 57.) During this incident, Jercha and Feliciano thought that Titus' tone and mannerisms were insubordinate. (*Id.*)

Based on the information provided by at least five different IDOT employees, Frias filled out a rules infraction notice against Titus for the three December 2005 incidents. (*Id.* ¶ 58.) After his pre-disciplinary meeting on April 21, 2006, Titus received a ten-day suspension for the December 2005 incidents because of his "disruptive conduct, insubordination, and failure to follow procedures." (*Id.* ¶ 59.)

### 5. January 2006 Fitness for Duty Examination

After the December 2005 incidents, Frias forwarded a request for a fitness for duty examination to be conducted on January 31, 2006, after which Titus was placed on administrative leave. (*Id.* ¶ 60.) Following the examinations, the treating physician concluded that Titus needed further treatment before returning to work. (*Id.* ¶¶ 61, 62.) Titus was placed on a paid leave of absence pending his treatment. (*Id.* ¶ 62.)

### D. Titus' EEOC Charges

On August 18, 2004, Titus filed a charge with the Equal Employment Opportunity Commission ("EEOC") against IDOT alleging that his July 2004 shift change was based on unlawful race discrimination. (*Id.* ¶ 15.) Thereafter, Titus filed a complaint in federal court

based on this charge that the Court dismissed as untimely. (*Id.* ¶¶ 16, 17.) On September 7, 2005, Titus filed a second charge with the EEOC against IDOT alleging race-based discrimination concerning the discipline for the April 2005 incidents and the May 2005 fitness for duty evaluations. (*Id.* ¶ 18.) Titus also alleged a retaliation claim in his second EEOC charge based on his August 18, 2004, EEOC charge. (*Id.*) On February 6, 2006, Titus filed a third charge with the EEOC alleging retaliation based on his first two EEOC charges. (*Id.* ¶ 19.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S.Ct. at 1776.

## ANALYSIS

I.  **Race Discrimination – Counts I, III, & IV**

In Counts I and III of his Second Amended Complaint, Titus alleges claims of race discrimination under Title VII and Section 1981 against IDOT. In Count IV, Titus alleges a race discrimination claim under Section 1981 against the individual Defendants. Because the same prima facie standards apply to both Title VII and Section 1981 race discrimination claims, the Court addresses Counts I, III, and IV together. *See Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 403 (7th Cir. 2007); *see also Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 940 (7th Cir. 1996) ("Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical."). A plaintiff may prove intentional race discrimination by either the direct or indirect method of proof as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).

  A.  **Direct Method**

Under the direct method, Titus must establish that the motivation behind IDOT's alleged adverse employment actions was based on his race. *See id.* "A plaintiff may prove discrimination using the direct method by establishing either an acknowledgment of discriminatory intent or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 939 (7th Cir. 2007). Put differently, direct evidence of discrimination would amount to IDOT's admission that it took

9

adverse employment actions against Titus based on his race. *See Raymond*, 442 F.3d at 610. There is no such evidence here. (*See* Defs.' Stmt. Facts ¶¶ 66-69.)

### B. Indirect Method

Because Titus has not presented any direct evidence of race discrimination, the Court reviews his claims under the *McDonnell-Douglas* indirect method of proof. Under this method, Titus must first establish a prima facie case of intentional race discrimination by showing that: (1) he is a member of a protected class; (2) he reasonably performed to Defendants' legitimate job expectations; (3) Defendants took a materially adverse employment action against him; and (4) Defendants treated him differently than similarly situated employees outside of his protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Raymond*, 442 F.3d at 610.

If Titus establishes a prima facie case of race discrimination, the burden of production then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802; *Raymond*, 442 F.3d at 610. If Defendants meet this burden, Titus must then show that the proffered explanation is pretext for discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981); *Raymond*, 442 F.3d at 610. The ultimate burden of persuasion, however, remains with Titus. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517-18, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993); *Raymond*, 442 F.3d at 610.

### C. Similarly Situated Employees

Viewing the evidence and all reasonable inferences in a light most favorable to Titus, his race discrimination claim fails because he has not presented sufficient evidence to fulfill the fourth prima facie element, namely, that Defendants treated similarly situated non-African-

Americans better than he. To determine whether employees are similarly situated, the Court's inquiry is a flexible one that considers "all relevant factors, the number of which depends on the context of the case." *Humphries,* 474 F.3d at 405 (quoting *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617 (7th Cir. 2000)). "An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007); *see also Radue,* 219 F.3d at 617-18. As the Seventh Circuit recently explained "the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Humphries,* 474 F.3d at 405; *see also Barricks v. Eli Lilly & Co.,* 481 F.3d 556, 560 (7th Cir. 2007) (purpose of the similarly situated test "is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play.").

Here, Titus identifies certain individuals as similarly situated and argues that these individuals are "all IDOT employees at ETP that are govern[ed] under the same IDOT Personnel Policies Manual." (R. 90-1, Pl.'s Resp., at 5.) Without giving any further details, Titus states that these individuals have the same supervisors and managers as he does. Titus then gives unsubstantiated examples of other employees and incidents that occurred before his time-barred July 2004 shift change claim. Many of these incidents are not similar to Titus' conduct as referred to in his EEOC charges. More importantly, Titus fails to identify whether these

11

individuals were African-American, if the individuals' background and experience were similar to his, or exactly who supervised these individuals. (*See* Defs.' Stmt. Facts ¶¶ 70-78.) Without more, Titus has failed to establish that at least one person was similarly situated to him, yet Defendants treated that individual better than Titus. *See Keri v. Board of Tr. of Purdue Univ.,* 458 F.3d 620, 628 (7th Cir. 2006) ("Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment"); *see also Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist., #163,* 315 F.3d 817, 822 (7th Cir. 2003) ("to withstand summary judgment, the non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations") (emphasis in original). Furthermore, it is not the Court's role to search through the record to make Titus' arguments for him. *See Corley v. Rosewood Care Center, Inc. of Peoria,* 388 F.3d 990, 1001 (7th Cir. 2004).

Accordingly, viewing all of the evidence and reasonable inferences in favor of Titus, he has failed to establish a prima facie case of race discrimination. Because Titus has failed to establish a prima facie case of intentional race discrimination, the Court need not reach the issue of pretext under the *McDonnell Douglas* indirect method of proof. *See Burks v. Wisconsin Dep't of Transp.,* 464 F.3d 744, 754 (7th Cir. 2006). Therefore, the Court grants Defendants' Motion for Summary Judgment as to Counts I, III, & IV of the Second Amended Complaint.

**II.     Title VII Retaliation – Count II**

In Count II of his Second Amended Complaint, Titus brings a Title VII retaliation claim against IDOT. Under Title VII, it is unlawful for an "employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any

12

manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII's "anti-retaliation provision seeks to secure th[e] primary objective [of] preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White,* ___ U.S. ___, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). "Like other Title VII claims, retaliation claims may be approached under either a direct or an indirect method of proof." *Bernier v. Morningstar, Inc.,* 495 F.3d 369, 375 (7th Cir. 2007).

### A. Direct Method of Proof

"Under the direct approach, the employee must show evidence that he engaged in a statutorily protected activity (such as bringing a Title VII claim) and as a result, suffered an adverse action." *Roney v. Illinois Dep't of Transp*. 474 F.3d 455, 459 (7th Cir. 2007). In other words, Titus must present evidence of (1) a statutorily protected activity, (2) an adverse action, and (3) a causal connection between the two. *See Burks,* 464 F.3d at 758 (citing *White,* 126 S.Ct. at 2413). "Evidence of retaliation is 'direct' when, if believed, it would prove the fact in question without reliance on inference or presumption." *Mannie v. Potter,* 394 F.3d 977, 983 (7th Cir. 2005). "This essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus, and because such evidence is rare we also allow the introduction of circumstantial evidence from which the fact-finder could infer intentional discrimination." *Id.* (internal citations and quotations omitted); *see also Sylvester v. SOS Children's Villages Ill., Inc.,* 453 F.3d 900, 902 (7th Cir. 2006).

### B. Indirect Method of Proof

Because Titus fails to argue, let alone establish, a causal connection between his EEOC

charges and any adverse actions taken by IDOT, *see Burks,* 464 F.3d at 758, the Court turns to the indirect method of proving a retaliation claim. Under the indirect method, Titus must establish a prima facie case of retaliation by offering evidence that: (1) he engaged in protected activity; (2) he suffered an adverse action; (3) he met IDOT's legitimate job expectations; and (4) he was treated less favorably than similarly situated employees who did not engage in the protected activity. *See id.* at 759; *see also Brewer v. Board of Tr. of Univ. of Ill.,* 479 F.3d 908, 923 (7th Cir. 2007).

Viewing the evidence and all reasonable inferences in Titus' favor, he has failed to set forth evidence creating a genuine issue of fact for trial concerning the fourth element of proof, namely, that IDOT treated him less favorably than similarly situated employees who did not file EEOC charges. First, Titus admits that he does not know if any of the alleged similarly situated individuals filed complaints of discrimination. (*See* Defs.' Stmt. Facts ¶ 78.) Second, as discussed above, Titus has failed to set forth sufficient evidence of at least one similarly situated individual whom IDOT treated more favorably than Titus. Instead, Titus sets forth general information about individuals without specifically addressing whether they held the same position or had similar job responsibilities and if they had the same supervisor, education, or experience. *See Burks,* 464 F.3d at 751. In other words, Titus has not provided the Court with any evidence upon which the Court can make a meaningful comparison to determine whether discrimination was at play. *See Barricks,* 481 F.3d at 560.

Because Titus has failed to satisfy the similarly situated element of his retaliation claim, the Court need not address the other prima facie elements. *See Roney,* 474 F.3d at 459 ("Failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim.").

As such, the Court grants Defendants' summary judgment motion as to Count II of the Second Amended Complaint.

### III.     Section 1983 Claim – Count V

In Count V, Titus brings a claim under 42 U.S.C. § 1983 against the individual Defendants.  Section 1983 creates a federal cause of action for "the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States."  *See* 42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that a government official – acting under color of state law – deprived him of a right secured by the Constitution or laws of the United States.  *Christensen v. County of Boone, Ill.,* 483 F.3d 454, 459 (7th Cir. 2007).  In other words, to recover under Section 1983 a plaintiff must allege that "(1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law."  *Savory v. Lyons,* 469 F.3d 667, 670 (7th Cir. 2006).

In his Second Amended Complaint, Titus alleges that the individual Defendants acted under the color of state law in committing racially discriminatory acts.  (Second Amend. Compl. ¶ 73.)  Titus further alleges that the individual Defendants each directly participated and were personally involved in the discriminatory employment practices as alleged in the Second Amended Complaint.  (*Id.* ¶ 74.)  Titus, however, never articulates the constitutional basis for his Section 1983 claim or what constitutional injury he has suffered.  In short, Titus never alleges or argues that the individual Defendants deprived him of a federal constitutional right – such as his

rights under the Equal Protection Clause or the First Amendment.[1]  Therefore, the Court dismisses Titus' Section 1983 claim in Count V of his Second Amended Complaint.

## IV.     Intentional Infliction of Emotional Distress – Count VI

Finally, in Count VI of his Second Amended Complaint, Titus alleges a claim of common law intentional infliction of emotional distress ("IIED") against the individual Defendants.  To establish a claim for IIED under Illinois law, a plaintiff must show that:  (1) defendants' conduct was extreme and outrageous; (2) defendants intended to inflict severe emotional distress, or knew there was a high probability that his or her conduct would do so; and (3) defendants' conduct caused severe emotional distress.  *Franciski v. University of Chicago Hosp.,* 338 F.3d 765, 769 (7th Cir. 2003) (citing *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498 (1994)).  "In order to prove intentional infliction of emotional distress in Illinois, a plaintiff must show that the defendant engaged in 'truly extreme and outrageous' conduct." *Muzikowski v. Paramount Pictures Corp.,* 477 F.3d 899, 908 (7th Cir. 2007) (citing *McGrath v. Fahey,* 126 Ill.2d 78, 86, 127 Ill. Dec. 724, 533 N.E.2d 806 (Ill. 1988)).  As such, recovery under this theory does not extend to conduct which merely involves insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  *See McGrath v. Fahey,* 126 Ill.2d at 86. "Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case."  *Franciski,* 338 F.3d at 769.

---

[1] Although the Seventh Circuit instructs that the same standards for proving intentional discrimination apply to Title VII and Section 1983 equal protection claims, Titus has failed to mention the equal protection clause in either his pleadings or brief.  *See Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003).  As such, Titus has abandoned this claim.  *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of any discussion in briefs amounts to abandonment of claim).

Here, Titus has failed to allege – let alone set forth evidence – why Defendants' conduct was extreme and outrageous. Instead, Titus makes unsubstantiated claims that certain Defendants lied about his conduct and thereafter intentionally violated the IDOT Personnel Polices Manual, which, even if true, is not extreme and outrageous conduct. *See Lopez v. City of Chicago,* 464 F.3d 711, 720 (7th Cir. 2006) (extreme and outrageous conduct goes "beyond all bounds of decency and [is] considered intolerable in a civilized community.") (citation omitted). Titus has failed to set forth any evidence that would raise a genuine issue of material fact for trial regarding his IIED claim. *See Keri,* 458 F.3d at 628 (conclusory allegations that are not supported by the record will not preclude summary judgment). Therefore, the Court grants Defendants' summary judgment motion as to Count VI of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment.

Dated: October 11, 2007

                                  **ENTERED**

                                  _____
                                  **AMY J. ST. EVE**
                                  **United States District Court Judge**